UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ASHLEY D. W.,[1]

   Plaintiff,

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

Case No. 24-CV-1596 (JFD)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ashley D. W. seeks judicial review of a final decision by the Defendant Commissioner of Social Security, which denied Plaintiff's application for supplemental security income. The matter is now before the Court on Plaintiff's Brief (Dkt. No. 33) and Defendant's Brief (Dkt. No. 35).

Plaintiff argues that the final decision should be reversed for three reasons. She contends that the administrative law judge ("ALJ") who authored the decision did not properly consider the opinions of Steven F. Taylor, M.A., and Larry Elj, APRN; that a recent diagnosis of Primary Progressive Multiple Sclerosis ("PPMS") warrants a reversal of the ALJ's decision; and that the ALJ erred by finding she was not disabled when she refrained from substance abuse. The Commissioner asks the Court to affirm the final decision in all respects. As set forth fully below, the Court finds that the ALJ did not err in the consideration of medical opinion evidence or in the evaluation of substance abuse. Nor

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

does Plaintiff's recent diagnosis of PPMS warrant reversal because it is not relevant to the time period considered by the ALJ. The Court therefore affirms the Commissioner's decision.

I.      Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019). Only SSI is at issue in this case. SSI is a program that provides benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Id.* (quoting *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)); *see also* 42 U.S.C. § 1382(a) (outlining eligibility requirements).

Plaintiff filed for SSI on March 20, 2020, alleging she became disabled on December 31, 2015. (*See* Soc. Sec. Admin. R. (hereinafter "R.") at 20.)[2] Plaintiff's alleged impairments included "bi polar," "PTSD," and "ADHD."[3] (R. 81.) The relevant period of time for Plaintiff's SSI application is generally between March 20, 2020, when Plaintiff filed the application, and August 3, 2022, when the ALJ's decision was issued. *See* 20 C.F.R. § 416.335 (establishing that the earliest an SSI claimant can receive benefits is the

---

[2] The Social Security administrative record is filed at Dkt. No. 20. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers for the administrative record.

[3] "Bi polar" refers to "Bipolar Disorder," while "ADHD" refers to "Attention-Deficit/Hyperactivity Disorder," and "PTSD" refers to "Post-Traumatic Stress Disorder."

month after the application is filed); *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (using the SSI application date as the beginning of the relevant time period); *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision as the end of the relevant time period). That said, medical records before the application date or close to the onset date can be relevant if they shed light on the claimant's impairments or limitations during the period of time under consideration. *See A.S.A. v. Saul*, No. 20-CV-74 (ECW), 2021 WL 1062037, at *3 (D. Minn. Mar. 19, 2021) (quotation omitted).

A. **Medical Evidence**[4]

Larry Elj, APRN, treated Plaintiff from March 21, 2022, through at least July 19, 2022, for her PTSD, Bipolar Disorder, ADHD, and Panic Disorder. (R. 1132.) On July 19, 2022, Mr. Elj wrote a "To whom it may concern" letter stating that Plaintiff had extreme anxiety and panic due to surges of intense fear. (R. 1132.) Plaintiff's symptoms included severe racing thoughts, a pounding heartbeat, trembling, difficulty breathing, chest pain, nausea, abdominal distress, dizziness, lightheadedness, numbness and tingling in her arms and fingers, and fear of impending doom. (R. 1132.) Mr. Elj opined that Plaintiff's symptoms impaired her abilities to concentrate and do simple tasks, caused irritability and agitation, and adversely affected her social relationships and daily functioning. (R. 1132.)

Steven F. Taylor, M.A., was Plaintiff's therapist. (R. 897.) In March 2021 and again in August 2021, Mr. Taylor assessed Plaintiff's mental residual functional capacity

---

[4] The Court limits its summary of relevant facts to the issues presented for judicial review.

("RFC").[5] Mr. Taylor rated numerous mental functioning abilities as markedly (which means seriously) limited or moderately (which means less than markedly but more than mildly) limited. (R. 689–91, 901–03.) The markedly or moderately limited abilities included, among others: understanding, remembering, applying, or carrying out detailed instructions; interacting appropriately with the general public; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance and being punctual; working in coordination with or proximity to others without being distracted by them; completing normal workdays and workweeks without interruptions from psychologically based symptoms; and tolerating normal levels of stress. (R. 689–91, 901–03.) Mr. Taylor opined that Plaintiff's impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time. (R. 691, 903.)

In April 2024—20 months after the ALJ's decision—provider Victoria Levasseur, MD, informed Plaintiff that recent imaging and laboratory results were "supportive of multiple sclerosis diagnosis." (Pl.'s Ex. at 4–5,[6] Dkt. No. 2.) In July 2024, neurologist Gary W. Beaver, D.O., wrote a letter stating that, after evaluating Plaintiff in May and June 2024, his diagnostic impression was "Demyelinating disorder most consistent with primary progressive multiple sclerosis." (Pl.'s Ex. at 1, Dkt. No. 19-1.) Dr. Beaver documented

---

[5] RFC is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." *See* 20 C.F.R. § 416.945(a)(1).

[6] For Plaintiff's exhibits only, the Court cites to the page numbers provided by the CM/ECF system at the top right of each page.

dysarthric speech, a prominent head tremor, normal motor strength in all extremities, and an "ataxic gait unable to tandem." (*Id.*) Dr. Beaver also wrote that Plaintiff said she had noticed "difficulties with shaking of hands when putting on make-up" and "difficulties with dexterity" about four years before. (*Id.*) Plaintiff claimed in a May 2024 letter to the Court that she had experienced shakiness and weakness in her arms and legs three years before the diagnosis. (Pl.'s Ex. at 1, Dkt. No. 10.)

B.     **Procedural History**

Plaintiff's SSI application was denied at both the initial and reconsideration stages of review. She requested an administrative hearing before an ALJ, which was held on July 27, 2022. The ALJ issued a written decision on August 3, 2022, finding that Plaintiff was not disabled. (R. 20–34.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 416.920 in making that determination.[7] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 416.920(a)(4).

The ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity since December 31, 2015, the alleged onset-of-disability date. (R. 22.) At the second step, the ALJ found Plaintiff had the following severe impairments: "panic disorder; post-traumatic stress disorder; bipolar disorder; attention-deficit hyperactivity

---

[7] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

disorder; and substance abuse disorder." (*Id.*) At step three, the ALJ found that—when Plaintiff's substance abuse disorder *was* included—the severity of her impairments met the criteria of § 12.06 (anxiety and obsessive-compulsive disorders) of 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 23.)

One of the ways a claimant can meet a listed impairment at step three is to satisfy certain criteria, commonly referred to as the paragraph A, B, and C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. The ALJ found that the paragraph A criteria were satisfied because Plaintiff had "restlessness, difficulty concentrating, irritability, anxiousness, and severe panic attacks." (R. 23.) The ALJ noted that when Plaintiff used methamphetamines, "she stops taking her psychotropic medications and requires in-patient treatment in order to stabilize." (R. 23.) The paragraph B criteria are (1) "Understand, remember, or apply information"; (2) "Interact with others"; (3) "Concentrate, persist, or maintain pace"; and (4) "Adapt or manage oneself." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.B. The ALJ found that when Plaintiff used methamphetamines, the paragraph B criteria were satisfied because Plaintiff's impairments "caused a marked limitation in understanding, remembering, or applying information, a marked limitation in interacting with others, a marked limitation in concentrating, persisting, or maintaining pace, and a marked limitation in adapting or managing oneself." (R. 23.)

However, if Plaintiff ceased substance use, her impairments would not meet or medically equal the severity of a listed impairment. (R. 25.) Rather, Plaintiff would have only a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating,

persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (R. 25–26.) The ALJ supported these findings with citations to Plaintiff's testimony (R. 52–61), her Function Report (R. 335–48), and office treatment records (R. 392–418, 623–61, 968–72).

Between steps three and four, the ALJ assessed Plaintiff's RFC. As part of that assessment, the ALJ considered the opinions of Mr. Taylor and Mr. Elj and found each opinion only minimally persuasive.[8] (R. 30–31.) The ALJ found that Mr. Taylor's conclusions were not supported by his treatment notes, giving several examples. (R. 30.) The ALJ further found Mr. Taylor's opinion inconsistent with Plaintiff's self-reported activities of daily living, mental examination findings, and treatment records. (R. 30.) In addition, the ALJ pointed out that Mr. Taylor did not consider how Plaintiff's substance abuse factored into the limitations and that Mr. Taylor used fill-in-the-blank and checkbox forms without providing much supporting explanation. (R. 30.) Regarding Mr. Elj, the ALJ found that his opinions were not supported by his treatment notes and that he had treated Plaintiff only briefly. (R. 31.) In addition, the ALJ observed that Plaintiff began using methamphetamines and stopped taking psychotropic medications in May 2022, but Mr. Elj did not consider how her relapse and noncompliance with medication affected her functioning. (R. 31.)

Ultimately, the ALJ determined that Plaintiff had the RFC to:

---

[8] The ALJ considered the opinions of Mr. Taylor and Mr. Elj also at step three of the sequential analysis. (R. 24.) The ALJ's discussion of the opinions between steps three and four was slightly longer than the step-three discussion, so the Court summarizes the latter one here.

7

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations: she is capable of working in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations; she is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; she is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; she is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; she is able to make occasional simple work-related decisions in a job involving only occasional changes in a routine work setting; she is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; she is incapable of in-person face-to-face interaction with the general public and is incapable of performing any tasks requiring customer service duties; and she is capable of no more than occasional interaction with co-workers and supervisors but is incapable of performing tasks requiring conflict resolution, requiring her to direct the work of others or persuade others, or requiring her to work jointly or cooperatively with a co-worker or co-workers on tandem tasks or in a team environment.

(R. 26–27.) Proceeding to step four in the sequential evaluation, the ALJ considered whether Plaintiff could perform her past relevant work as a telemarketer and determined she could not. (R. 32.) At step five, the ALJ determined that if Plaintiff stopped her substance use, she could find work as a Laundry Worker I, Electronics Worker, or Addresser, which are jobs that exist in significant numbers in the national economy. (R. 33.)

Finally, the ALJ determined that Plaintiff's substance use disorder was a contributing factor material to the determination of disability, and that she would not be disabled if she stopped the substance use. (R. 33.) Therefore, Plaintiff was not disabled

under the standards of the SSA at any time from the alleged onset date to the date of the decision. (R. 33.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purposes of judicial review.

## II.     Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the

Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

### III. Discussion

#### A. The ALJ Properly Considered the Opinions of Mr. Taylor and Mr. Elj.

Plaintiff argues that the ALJ did not properly consider the medical opinions of Mr. Taylor and Mr. Elj. Under 20 C.F.R. § 416.920c, the ALJ must consider the persuasiveness of a medical opinion based on five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. § 416.920c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ's failure to articulate how the ALJ considered the consistency factor or the supportability factor is a legal error that requires remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*,

No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

An ALJ assesses supportability by analyzing how well the medical source's opinion is justified by that source's use of objective medical evidence. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). That is, the ALJ evaluates whether the medical opinion at issue is consistent with evidence from sources other than the source who rendered the opinion. 20 C.F.R. § 416.920c(c)(2).

The ALJ must not only *consider* the regulatory factors, but must also *articulate* that consideration. 20 C.F.R. § 416.920c(a) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section."); 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Given that the supportability and consistency factors are the most important factors to the persuasiveness determination,

11

an ALJ "*will explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2) (emphasis added).

The Court finds here that the ALJ adequately considered both the consistency and the supportability factors as they applied to the opinions of Mr. Taylor and Mr. Elj, and substantial evidence on the record as a whole supports the ALJ's findings.

Beginning with Mr. Taylor, the ALJ found Mr. Taylor's opinion to be "minimally persuasive." (R. 24, 30.) In the ALJ's articulation of supportability, the ALJ summarized several treatment notes from Mr. Taylor that did not support his conclusions. (R. 30.) For example, in March 2020, Mr. Taylor wrote that Plaintiff "was cooperative, had a coherent stream of consciousness, had a tangential thought process, had normal thought content, had no hallucinations or delusions, had an appropriate affect and neutral mood, and had intact memory, judgment, and insight." (R. 30.) In August 2021, Mr. Taylor documented "an intact thought process, normal thought content, no hallucinations or delusions, a constricted affect, a neutral mood, and a coherent stream of consciousness." (R. 30.) These findings did not support the marked limitations recommended by Mr. Taylor.

The ALJ also considered that Mr. Taylor used fill-in-the-blank and checkbox-type forms without providing much supporting explanation. Although fill-in or checkbox forms are not deficient *per se*, an opinion provided on such a form may be less persuasive when it is not supported by objective testing or clinical findings. *See Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). Here, the explanations following the limitations circled on the form consisted of what Plaintiff had "reported" to Mr. Taylor, not Mr. Taylor's own objective findings or observations.

12

In the ALJ's articulation of consistency, the ALJ found that Mr. Taylor's opinion was inconsistent with Plaintiff's self-reported activities of daily living and other mental status examinations contained in the record. These findings are supported by substantial evidence. When Plaintiff was not using substances, her providers described her as alert; oriented as to time, place, person, and situation; well-developed, well-nourished, well-groomed, and in no acute distress; cooperative, pleasant, and friendly; coherent in her thoughts; and with generally intact memory, attention span, and concentration. (*E.g.*, R. 398, 410, 423, 439, 725, 809, 1023, 1025, 1037.) Her daily activities included preparing meals, shopping, doing household chores, using public transportation, caring for her children, interacting with family and friends, watching television and reading, and caring for her personal needs. (*E.g.*, R. 60, 346–48, 646, 677, 835.) The seriously limited abilities opined by Mr. Taylor were not consistent with Plaintiff's daily activities or with mental status examinations from other sources.

Turning to Mr. Elj and the supportability of his opinion, the ALJ explained that the limitations recommended by Mr. Elj were not supported by his own treatment records that described cooperative behavior, appropriate affect, intact thought processes and content, fair insight, and intact judgment. (R. 31.) Further, the ALJ found, Mr. Elj's opinion was not consistent with treatment records from periods of time when Plaintiff was sober and demonstrated greater capabilities, nor did Mr. Elj take into account when Plaintiff began using methamphetamines again and discontinued her psychotropic medications, even though methamphetamine abuse, as described above, had a material effect on disability. (R. 31.) The ALJ also properly considered the brevity of the treatment relationship. 20

13

C.F.R. § 416.920c(c)(3)(i). As with Mr. Taylor's opinion, the Court finds that the ALJ properly considered Mr. Elj's opinion, and that there was adequate evidence on the record as a whole to support the ALJ's findings.

### B.     Evidence of Plaintiff's 2024 PPMS Diagnosis Is Not Relevant.

Plaintiff's 2024 diagnosis of PPMS could possibly be the basis for her to file a new application for benefits for a different period of time. For purposes of this appeal, however, the impairment and related limitations simply fall outside the window of time under consideration.

When reviewing a final decision of the Commissioner denying an SSI application, the Court cannot consider evidence outside the administrative record. *Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) ("In the context of judicial review of a decision of the Commissioner regarding SSI disability benefits, evidence outside the administrative record generally is precluded from consideration by the court."). The Court may remand a case to the SSA for consideration of new evidence only if it is "material," which means it is "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000) (quoting *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)).

The evidence provided by Plaintiff concerning her 2024 PPMS diagnosis is not probative of Plaintiff's condition between March 20, 2020 and August 3, 2022. The relevant period of time ended on August 3, 2022, and Plaintiff was diagnosed in April 2024. The Court has considered whether Plaintiff might have experienced symptoms attributable to PPMS before her diagnosis, in light of Plaintiff's comment to Dr. Beaver

14

that she had noticed shaky hands about four years before the diagnosis and Plaintiff's statement in a letter to the Court that she experienced shakiness and weakness in her arms and legs three years before the diagnosis. But Plaintiff has not identified any evidence in the record documenting shakiness or weakness before August 3, 2022, that could have been attributable to PPMS. To the contrary, in October 2021, Plaintiff's provider reported normal muscle strength and tone. (R. 1024.) Plaintiff reported increased pacing, swaying, sweating due to anxiety, but not shakiness of any kind. (R. 1022.) In June 2022, Plaintiff denied shakiness, and a doctor's review of symptoms showed no weakness. (R. 1109, 1119.)

In sum, the new evidence does not relate to a period of time before the date of the ALJ's decision, and there is not a reasonable likelihood that it would have changed the ALJ's decision.[9]

### C.   The ALJ Did Not Err in Evaluating Plaintiff's Substance Use.

Finally, Plaintiff suggests that the ALJ's consideration of her substance abuse was flawed because mental impairments can contribute to substance use, and people with mental impairments sometimes use substances to self-medicate. The Commissioner responds that the ALJ followed the regulatory scheme in considering Plaintiff's substance use and that substantial evidence supported the ALJ's determinations.

---

[9] Again, the Court is not saying that Plaintiff's PPMS diagnosis could not be a valid basis to receive benefits. If Plaintiff wishes to apply for benefits based on her PPMS diagnosis, the proper remedy is for her to file a new application for benefits. Not only was this the advice of Plaintiff's former attorney, but the Commissioner also mentions this possible recourse in his brief.

When there is evidence of drug addiction or alcoholism in the record, the ALJ must first determine whether the claimant is disabled. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). If, and after, the ALJ determines that a claimant is disabled, then the ALJ assesses whether the substance use is a contributing factor material to the disability determination. 20 C.F.R. § 416.935(a). "The key factor . . . is whether we would still find you disabled if you stopped using drugs or alcohol." *Id.* § 416.935(b)(1). The ALJ will evaluate which limitations would remain in the absence of substance use and whether the limitations would be disabling. *Id.* § 416.935(b)(2). "[I]f alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied." *Brueggemann*, 348 F.3d at 693. "[T]he claimant has the burden of demonstrating that she would still be disabled if she were to stop using drugs or alcohol." *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005).

The Court finds that the ALJ properly applied the relevant legal standards in assessing Plaintiff's substance use and that substantial evidence supports the ALJ's determination. The ALJ first found that the severity of Plaintiff's mental impairments met the criteria of Listing § 12.06 because she had marked limitations in all four areas of mental functioning; thus, she was disabled. The ALJ next considered whether, if Plaintiff ceased substance use, she would still be disabled. The ALJ determined she would not, because her remaining limitations would not meet or medically equal a listed impairment and she would have the RFC to meet the requirements of work. The ALJ supported the latter determination with specific references to objective medical evidence and Plaintiff's reports to her providers. This evidence supported only moderate limitations in the four areas of mental

functioning. Thus, Plaintiff's substance use was a contributing factor material to the disability determination, and she was not entitled to benefits.

## IV. Conclusion

In sum, all three of Plaintiff's challenges to the ALJ's decision do not warrant a reversal or remand. The ALJ properly considered and articulated his consideration of medical opinions, and there was substantial evidence on the record to support the conclusions. The ALJ also properly considered whether Plaintiff's substance use was a contributing factor material to the determination of disability, and substantial evidence supported the conclusion. Finally, Plaintiff's 2024 PPMS diagnosis is not relevant to the time period under consideration by the ALJ.

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 33) is **DENIED**;

2. The relief requested in Defendant's Brief (Dkt. No. 35) is **GRANTED**; and

3. The Commissioner's final decision is affirmed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 15, 2025         *s/ John F. Docherty*
                                  John F. Docherty
                                  United States Magistrate Judge